IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INGENUS PHARMACEUTICALS, LLC, and LEIUTIS PHARMACEUTICALS LLP,<br><br>Plaintiffs,<br><br>v.<br><br>NEXUS PHARMACEUTICALS, INC.,<br><br>Defendant. | Case No. 22−cv−02868<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ingenus Pharmaceuticals, LLC ("Ingenus") and Leiutis Pharmaceuticals LLP ("Leiutis," and collectively "Plaintiffs") sued Defendant Nexus Pharmaceuticals, Inc. ("Nexus"), alleging that Nexus infringed U.S. Patent No. 10,993,952 (the "'952 Patent"). Before the Court now is Nexus's motion for summary judgment for lack of standing [137]. For the reasons stated herein, Nexus's motion is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are

1

material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND

On July 30, 2020, the United States Food and Drug Administration ("FDA") approved Plaintiffs' New Drug Application ("NDA") No. 212501, which was for the sale and manufacture of a cyclophosphamide solution for intravenous use (the "Ingenus Product"). [164] ¶ 5. Cyclophosphamide is used for the treatment of malignant diseases such as lymphomas, myeloma, leukemia, breast carcinoma, and more. [164] ¶ 8. On December 28, 2021, Nexus submitted its Abbreviated New Drug

2

Application No. 216783 ("ANDA"), which sought FDA approval for cyclophosphamide solution for intravenous injection. [159] ¶¶ 28. Nexus's proposed drug product contains as formulation ingredients cyclophosphamide, ethanol, propylene glycol, polyethylene glycol, and monothioglycerol, as does Plaintiffs' product. [159] ¶ 28. The FDA approved Nexus's ANDA on October 29, 2024. [154] ¶ 4.

At the time Plaintiffs filed this lawsuit, they were the owners and assignees of the '952 Patent. [164] ¶ 13. On June 6, 2024, however, Ingenus and Leiutis executed an agreement in which Leiutis terminated its rights in the '952 Patent and transferred all rights to Ingenus (the "Termination Agreement"). [164] ¶¶ 16-17. Plaintiffs' counsel subsequently confirmed in email communications that Leiutis retained no further rights in the '952 Patent. [164] ¶ 21.

On June 11, 2024, Ingenus and Dr. Reddy's Laboratories ("DRL") executed an agreement under which Ingenus transferred at least some rights in the '952 Patent to DRL (the "DRL Agreement"). [164] ¶¶ 22-23. The DRL Agreement states that it "grants to DRL an exclusive . . . license" to develop, manufacture, commercialize, and/or have commercialized the Ingenus Product. [164] ¶ 24; [116-1] at 3. Under the terms of the agreement, DRL is required to pay Ingenus a portion of any profits it makes from selling the Ingenus Product. [116-1] § 5.1.1. The DRL Agreement provides various conditions on both parties' abilities to sublicense, subcontract, or assign any of their rights or obligations under the agreement. *See* [164] ¶¶ 25 – 28. The DRL Agreement further provides that Ingenus and DRL will "enter into separate supply agreement for Ingenus to manufacture and supply the Ingenus Product,"

3

though no party has produced any separate supply agreements in this litigation. [164] ¶ 28.

Under the terms of the DRL Agreement, Ingenus has "the obligation and sole right . . . to initiate, control, and settle . . . any action alleging Infringement of" the '952 Patent. [164] ¶ 36; [116-1] § 6.3.2. Further, DRL has no rights under the agreement other than those explicitly granted therein. [164] ¶ 44; [116-1] § 2.5.

## ANALYSIS

### I. Standing

To have standing to bring a patent infringement claim, plaintiffs "must meet both constitutional and prudential [or statutory] standing requirements." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007).[1] Nexus argues that following the Termination Agreement and the DRL Agreement, neither Ingenus nor Leiutis have either form of standing and their infringement claim must be dismissed.

Constitutional standing and statutory standing stem from different areas of law and require different inquiries. "[S]tanding in a patent case is anything but straightforward," and its confusion "has been exacerbated by inconsistent rulings." *Uniloc USA, Inc. v. Motorola Mobility, LLC*, No. CV 17-1658-CFC, 2020 WL 7771219, at *3 (D. Del. Dec. 30, 2020), *aff'd*, 52 F.4th 1340 (Fed. Cir. 2022). Indeed, the Federal Circuit has itself acknowledged that its caselaw has wrongly "often treated 'statutory standing' . . . as jurisdictional," despite that the jurisdictional question is one of

---

[1] The parties use the terms "statutory standing" and "prudential standing" interchangeably. The law likewise treats the terms as synonyms. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). The Court uses the term "statutory standing" in this opinion.

4

constitutional rather than statutory standing. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019).

In *Lexmark*, the Supreme Court explained that statutory standing does not implicate subject-matter jurisdiction and requires a separate analysis from constitutional standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Constitutional standing asks whether a plaintiff has a redressable injury in fact as contemplated by Article III of the constitution, *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 813 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 568 (2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)), while statutory standing asks whether a plaintiff is one whom Congress has authorized to sue. *Deere & Co. v. Kinze Mfg., Inc.*, 683 F. Supp. 3d 904, 915 (S.D. Iowa 2023) (citing *Lexmark,* 572 U.S at 128). In a patent infringement case, such individuals are identified in 35 U.S.C. § 281. *See id.*

In 2019, following *Lexmark*, the Federal Circuit acknowledged this distinction. *See Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) (citing *Lone Star,* 925 F.3d at 1299) (noting that the Federal Circuit "made clear that whether one qualifies as a patentee under 35 U.S.C. § 281 is a statutory prerequisite to the right to relief in a patent infringement action [that] does not implicate the district court's subject-matter jurisdiction."). Since then, the Federal Circuit has warned litigants and courts "against conflating statutory requirements with jurisdictional/standing requirements." *In re Cirba Inc.*, No. 2021-154, 2021 WL 4302979, at *3 (Fed. Cir. Sept. 22, 2021). But nearly all the Federal Circuit's patent-

infringement standing decisions relevant to the instant matter were issued before the Federal Circuit made this standing delineation clear. *See, e.g.*, *Morrow*, 499 F.3d at 1339 (conflating the statutory analysis under § 281 with "Article III standing requirements"); *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010) (same); *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) (same). The Federal Circuit itself has described *Lexmark* as "irreconcilable with [its] earlier authority treating § 281 as a jurisdictional requirement" and acknowledged that at least some of its precedent on the matter has been "implicitly overruled." *Lone Star*, 925 F.3d at 1235 (citing *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014)). From this morass, the Court sets forth the relevant inquiries under both constitutional and statutory standing and then evaluates whether either Plaintiff can satisfy both.

A. Constitutional Standing

Constitutional standing derives from Article III of the constitution and limits federal courts to resolving only "cases" and "controversies." This limitation requires that a plaintiff demonstrate "(1) an injury in fact; (2) traceability; and (3) redressability." *Intell. Tech* 101 F.4th at 813. In a patent infringement lawsuit, "[t]he touchstone of constitutional standing [...] is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010); *see also Intell. Tech*, 101 F.4th at 816 ("A patent owner has exclusionary rights as a baseline matter unless it has transferred

6

*all* exclusionary rights away.") (emphasis added). Exclusionary rights "involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.'" *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (quoting *Morrow*, 499 F.3d at 1342). Thus, the only relevant question regarding constitutional standing is whether either Plaintiff possesses a single exclusionary right with respect to the '952 Patent.

Nexus argues that both Plaintiffs transferred away their exclusionary rights in the '952 Patent and thus lack constitutional standing. With respect to Leiutis, Nexus is correct. Leiutis transferred all their rights, exclusionary or otherwise, to Ingenus in the Termination Agreement. Nexus is thus entitled to summary judgment against Leiutis. Leiutis is dismissed from the case.

More complicated, however, is the status of any rights Ingenus retained in the DRL Agreement. "Typically, [courts] are confronted with cases in which an exclusive licensee sues an accused infringer, and [the court] must decide whether the licensee has been granted rights sufficient to confer standing." *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010). That is not the case here, where Ingenus, the licensor, has sued for infringement without its exclusive licensee, DRL. Ingenus's burden—to establish that it has at least one exclusionary right in the patent—remains the same, however. *See Lone Star*, 925 F.3d at 1234.

As noted above, exclusionary rights include "the ability to exclude others from practicing an invention," and courts have understood that to encompass the right to

7

sue for infringement. *See id.* At first blush, that appears to settle the issue. The DRL Agreement explicitly provides that Ingenus has "the obligation and sole right . . . to initiate, control, and settle . . . any action alleging Infringement" of the patent. [116-1] § 6.3.2. But Nexus argues that other elements of the DRL Agreement render Ingenus's purported right to sue illusory. Indeed, if a licensor's right to sue is illusory, that purported right may be insufficient to confer standing. *Alfred E. Mann*, 604 F.3d at 1361. The Federal Circuit has held that a licensor's right to sue is illusory when the licensee can deprive a licensor of its ability to protect its rights in the patent by sublicensing out use of the patented technology to any accused infringers. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000).

After a review of the relevant Federal Circuit caselaw, the Court holds that Ingenus's right to sue is not illusory. *Alfred E. Mann* is instructive.[2] There, the licensor, AFM, licensed at least some of its rights to an exclusive licensee, AB, and AFM subsequently sued an alleged infringer. 604 F.3d at 1361. Under the terms of the agreement between AFM and AB, AB maintained the first right to decide whether to initiate litigation against an accused infringer. *Id.* AMF was permitted to participate in the litigation using counsel of its choice, but AB had "the final say on all decisions relating to this litigation." *Id.* Further, AB retained the final right to settle any litigation without the consent of AMF. *Id.* AMF also had the right (but not

---

[2] *Alfred E. Mann* discusses the effect of an illusory right to sue in the context of determining whether a licensor transferred "substantive rights" to its licensee such that it no longer maintains ownership of the patent. 604 F.3d at 1361. As the Federal Circuit made clear in *Lone Star*, any weighing of substantive rights is more appropriately considered in an analysis of statutory, rather than constitutional, standing. However, the Court believes its analysis of the right to sue is nonetheless helpful in assessing whether Ingenus retained any exclusionary rights in the DRL Agreement.

8

the obligation) to sue for infringement, but only if AB first declined to bring an action. *Id*. Regardless of who brought suit, both AMF and AB were to share in the proceeds of any infringement litigation. *Id*. Based on this contractual agreement, the Federal Circuit held that AMF's right to sue was "secondary to those of AB." *Id*. at 1362.

Further complicating matters for AMF was that AB had the right to grant sublicenses under the relevant licensing agreement. *Id*. The defendant argued that, even if AMF could sue infringers on its own, AB's sublicensing right rendered AMF's right to sue illusory because AB "could terminate that suit by granting an inexpensive or even cost-free sublicense to the infringer." *Id*. The Federal Circuit disagreed, holding that because any sublicensee had to pay pass-through royalties to AMF, AB's right to sublicense was "fettered" and did not render illusory AMF's right to sue. *Id*.; *cf. Speedplay*, 211 F.3d at 1250 (licensor's right to sue was illusory where licensee could grant an infringer a royalty-free sublicense). In the Federal Circuit's reasoning, AB's fettered right to sublicense did not supplant AMF's exclusionary right to sue, even when AMF's right to sue was secondary to AB's. AMF thus had constitutional standing to sue for infringement.

Here, Ingenus's right to sue is stronger than AMF's, and DRL's right to sublicense is just as fettered as AB's. Unlike AMF, Ingenus need not wait for its sublicensee to decline to prosecute a patent infringement action before bringing its own. Rather, under the terms of the DRL Agreement, Ingenus is the *only entity* who can initiate such litigation. Indeed, even if DRL is sued by a third party for infringement, it has *no right to defend itself*; Ingenus retains that sole right and obligation. [116-1] § 6.4.

And although DRL could potentially sublicence the patent out to an accused infringer, the DRL Agreement requires that DRL pay Ingenus a portion of the sublicensee's profits. [116-1] § 5.1.1. Under this arrangement, DRL could not simply terminate infringement litigation brought by Ingenus by granting the infringer a sublicense without incurring substantial costs itself. DRL's right to sublicense is fettered, just as AB's was.

Nexus separately argues that Ingenus's right to control any patent litigation is illusory because Ingenus cannot settle such an action "without DRL's prior written consent which shall not be unreasonably withheld." [139] at 4-5 (citing [116-1] § 6.3.2). In support of this argument, Nexus primarily relies on *FlowRider Surf*, where FlowRider, a licensee, acquired rights in a patent from Surf Park, the licensor. *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 315CV01879BENBLM, 2017 WL 2349031, at *4 (S.D. Cal. May 26, 2017). There, although Surf Park retained a secondary right to sue for infringement, FlowRider retained "the sole an exclusive right to settle any" infringement claims "without the express written consent" of Surf Park. *Id*. at *6. The California district court held that FlowRider thus "remain[ed] in control of any litigation."

Notwithstanding that the *FlowRider* court's analysis conflates constitutional and statutory standing, the licensing agreement between the parties there is distinguishable from the DRL Agreement here. FlowRider functionally maintained full control over the outcome of *any* infringement litigation. If Surf Park brought an infringement action, FlowRider had the right to settle that litigation immediately,

10

without the consent of Surf Park, and under any terms of FlowRider's choosing. Any litigation brought by Surf Park could only exist under the threat of an unfavorable settlement initiated by FlowRider in which Surf Park would have no say. Here, DRL has no right to settle an infringement action *at all*. Rather, it has only a limited right to veto a settlement proposed by Ingenus, but that veto can "not be unreasonably withheld." That FlowRider—a licensee—had standing because it maintained the first right to sue for enforcement and the exclusive right to settle an infringement action says nothing about whether Ingenus—a licensor—has standing where its licensee has no right to sue and no right to settle.

Ingenus thus retains the exclusionary right to sue for infringement of the '952 Patent and has constitutional standing in this action.

B. Statutory Standing

The statutory standing inquiry asks whether a plaintiff is one "whom Congress has authorized to sue." *Deere & Co. v. Kinze Mfg., Inc.*, 683 F. Supp. 3d 904, 915 (S.D. Iowa 2023) (citing *Lexmark,* 572 U.S at 128). In an action for patent infringement, this question is governed by 35 U.S.C. § 281, which narrowly provides that only "[a] patentee" is authorized to sue. A "patentee" is defined to include "the patentee to whom the patent was issued [and] also the successors in title to the patentee." 35 U.S.C. § 100(d). A "successor in title" to the patentee is one who holds the "legal title" to the patent. *Enzo Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). The Federal Circuit has explained that an owner of a patent may lose legal title to a patent if it "has transferred sufficient rights to [the licensee] to render [the

11

licensee] the owner" of the patent. *Alfred E. Mann*, 604 F.3d at 1360 (Fed. Cir. 2010); *see also Lone Star*, 925 F.3d at 1229 ("If the party asserting infringement is not the patent's original patentee, the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license.") (internal quotation marks and citation omitted).

Both parties argue at length over whether Ingenus transferred "all substantial rights" to DRL. Indeed, the Federal Circuit has held repeatedly that an exclusive licensee can only bring suit on its own if it has received all substantial rights from the licensor. *See, e.g., A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1216 (Fed. Cir. 2010). But Ingenus is not an exclusive licensee, and this is thus not the relevant inquiry. Following the Termination Agreement with Leiutis, Ingenus undisputably became the owner (and thus the patentee) of the '952 Patent. The question is whether Ingenus "transferred *sufficient* rights," not *all* rights, to DRL such that Ingenus has lost its ownership interest in the patent. *Alfred E. Mann*, 604 F.3d at 1360 (emphasis added).

The Federal Circuit has never "establish[ed] a complete list of the rights whose holders must be examined to determine whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent," but it has "listed at least some of the rights that should be examined." *Id*. These rights include (1) the scope of a licensee's right to sublicense, (2) the nature of the reversion of rights to the licensor following any breaches of the licensing agreement, (3) the obligation of

12

the licensor to pay patent maintenance fees, and (4) the nature of any limits on the licensee's right to assign its interests in the patent. *See id.* at 1361 (collecting cases).

Each of these rights weigh in favor of finding that Ingenus maintains sufficient rights to have statutory standing. First, as discussed at length above, DRL's right to sublicense under the agreement is fettered by the fact that DRL is responsible for paying to Ingenus a portion of any of its sublicensees' profits. Second, following any material breach that leads to termination of the DRL Agreement, all rights and licenses granted to DRL and any of its sublicensees terminate, DRL is to transfer to Ingenus its inventory, and the parties are to agree upon a reversion agreement under which the patent rights revert to Ingenus. [116-1] §§ 1.21; 10.3.1 – 10.3.3. Third, Ingenus is obligated to pay any maintenance fees on the patent. *See* [116-1] §§ 6.2.1 (Ingenus has the obligation to "Prosecute all Ingenus Product Patent Rights); 1.38 (defining "Prosecute" as including payment of maintenance fees).

Finally, DRL cannot assign its rights or obligations to non-affiliates of DRL without the express consent of Ingenus. [116-1] § 11.3. Nexus argues otherwise, but their argument appears to be based on a misreading of § 11.3 of the DRL Agreement. Nexus contends that § 11.3 allows DRL to sell its entire inventory of cyclophosphamide and assign its patent rights "to anyone" without Ingenus's consent. 179 at 6. But the provision that allows DRL to assign any interests without Ingenus's consent applies only to *DRL's own affiliates*. The DRL Agreement defines DRL's affiliates as those whom DRL "control[s]" through "actual power . . . whether by ownership of more than [50%] of the voting stock of such entity, by contract, or

13

otherwise." [116-1] § 1.2. The potential universe of entities to whom DRL can assign its rights without the consent of Ingenus, then, is far more limited than Nexus contends.

Whether Ingenus retains a right to sue is also relevant to whether it has statutory standing under § 281. *See Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1343 (Fed. Cir. 2014) ("In determining the nature of a transfer of rights, we have repeatedly recognized that a 'key factor has often been where the right to sue for infringement lies.'"). For the reasons discussed above, the Court holds that Ingenus retained that right in the DRL Agreement.[3] Ingenus's right to sue (and DRL's inability to do so) thus also weighs in favor of finding that Ingenus has statutory standing.

Because an analysis of parties' substantial rights reveals that Ingenus maintains ownership of the '952 Patent, Ingenus has statutory standing to sue for its alleged infringement.

C. Joinder and Policy Considerations

Nexus argues that as a matter of policy, it should be awarded summary judgment because DRL's absence from the case risks serial litigation and inconsistent judgments. In Nexus's view, if judgment is awarded in its favor, DRL could later try to claim that its rights were not properly represented and be able to bring another

---

[3] Nexus argues that *Morrow* compels a contrary holding. [179] at 8-9. There, the Federal Circuit found that a trustee of a patent who was given a contractual right to sue was nonetheless not a "patentee" and could not sue for infringement, either on its own or through joinder with the patent owner. *Morrow*, 499 F.3d at 1342. The Court is unpersuaded by *Morrow* because its standing analysis conflates constitutional and statutory standing. In addition, *Morrow*'s facts are too dissimilar from those before the Court to be helpful. There, the plaintiff-trustees had *no substantial rights* in the patent other than the right to sue for infringement and to defend in any infringement actions. But Ingenus retains other rights in the '952 Patent, including reversionary rights and the right to veto assignments to non-affiliates, so *Morrow* is inapposite.

14

infringement claim. But the Federal Circuit has held that, where an exclusive licensee who might otherwise be able to sue for infringement on its own brings an action without the patent owner, the appropriate remedy is to join the patent owner pursuant to Federal Rule of Civil Procedure 19 rather than dismiss the action. *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) ("[T]he patent owner must ordinarily join, in any infringement action, an exclusive licensee . . . [t]o hold otherwise would be to allow a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation"); *Morrow*, 499 F.3d at 1340 ("The patentee is joined for the purpose of avoiding the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer."). The Federal Circuit has also indicated that where, as here, a licensor brings an infringement lawsuit without its exclusive licensee, policy reasons require joining the licensee if the licensee has an independent ability to sue. *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1344 (Fed. Cir. 2006) (remanding to the district court to determine whether a non-party licensee held an exclusive license with a right to sue at the time an infringement action was filed by the patentee). The Federal Circuit's holding reflects the same policy concerns underlying Nexus's motion: if DRL as an exclusive licensee could sue Nexus independently from Ingenus, then Nexus could face exposure to multiple or duplicative lawsuits based on the same alleged infringement. The question to answer, then, is whether DRL could independently sue Nexus such that DRL is a necessary party that must be joined in this action.

15

For the same reasons that Ingenus has standing to sue, DRL does not. As an initial matter, DRL plainly and affirmatively gave up *any right* to sue for infringement in the DRL Agreement. *See* [116-1] § 6.3.2 (Ingenus has the "sole" right to sue for infringement); [116-1] § 2.5 (DRL has no rights under the agreement other than those explicitly granted in the agreement). And even if DRL did not contract away its right to sue, it nonetheless could not sue for infringement of the '952 Patent because it does not have statutory standing to do so. DRL is not the original patentee and, for the reasons discussed above, it is not a "successor in title" to the '952 Patent; Ingenus is. Joinder of DRL is thus unnecessary.

## CONCLUSION

For the stated reasons, Nexus's motion for summary judgment on standing [137] is granted in part and denied in part. Leiutis is dismissed from the case. The motion is denied as to Ingenus. Ingenus has standing to proceed in this action.

E N T E R:

Dated: May 6, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16